UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JIMMY DALE HUBERT, JR. | Case No. 3:14-cv-00330-CWD |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Currently pending before the Court is Jimmy Hubert Jr.'s (Petitioner) Petition for Review of the Respondent's denial of social security benefits, filed August 11, 2014. (Dkt. 1.)The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record (AR). For the reasons that follow, the Court will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for a period of disability and an application for Disability Insurance Benefits and Supplemental Security Income on October 18, 2011, claiming disability due to low back pain. This application was denied initially and on reconsideration, and a hearing

**MEMORANDUM DECISION AND ORDER - 1**

was held on April 30, 2013, before Administrative Law Judge (ALJ) James Sherry. After taking testimony from Petitioner, Petitioner's spouse, and vocational expert Diane Kramer, ALJ Sherry issued a decision on May 21, 2013, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on June 18, 2014. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 46 years of age. Petitioner completed high school, and his work experience includes work as a log truck driver, moving van driver, delivery truck driver, concrete mixing truck driver, and hand packager.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had engaged in substantial gainful activity since his alleged onset date, August 16, 2011. However, the ALJ continued his analysis.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's lumbar degenerative disc disease with mild foraminal stenosis, and cervical degenerative disc disease with mild diffuse degenerative changes, severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.04 (spinal impairments) in his determination. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the

**MEMORANDUM DECISION AND ORDER - 2**

claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform his past relevant work as a truck driver. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined Petitioner's RFC would allow him to perform light work, with the limitations of: unlimited pushing and pulling with his upper extremities within lifting restrictions; never climb ladders, ropes, or scaffolds; occasionally stoop and crouch; frequently climb ramps and stairs, as well as balance, kneel, and crawl; and avoid concentrated exposure to poorly ventilated areas, excessive vibration, and hazards such as moving machinery and unprotected heights. With such an RFC, the ALJ found Petitioner could perform work as an advertising material distributor, electrical assembler, or outside deliverer, all of which are considered light work.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national

**MEMORANDUM DECISION AND ORDER - 3**

economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a

**MEMORANDUM DECISION AND ORDER - 4**

careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at steps one and four. Specifically, the issues presented are:  (1) whether the ALJ's finding that Petitioner's work in 2012 was substantial gainful activity was reasonable; (2) whether the ALJ's evaluation of the opinion of a treating physician was reasonable; (3) whether the ALJ's evaluation of the opinions of the State agency consultants was reasonable; (4) whether the ALJ's assessment of Petitioner's obesity was free of harmful legal error; and (5) whether the ALJ's evaluation of the "other" source statement was reasonable.

**1.      Step One and Substantial Gainful Activity**

Petitioner argues the ALJ erred in determining Petitioner engaged in substantial gainful activity after the application date because his work between July of 2012 and December 15, 2012, was an unsuccessful work attempt.  Brief at 3 (Dkt. 16.) If a claimant can engage in substantial gainful activity, the claimant is not disabled within the meaning of the Social Security Act. *Tackett v. Apfel* 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1571. Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full-or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a).

Although the ALJ found plaintiff had engaged in substantial gainful activity since August 16, 2011, the alleged onset date, he declined to make an unfavorable decision at step one. (AR

**MEMORANDUM DECISION AND ORDER - 5**

14.) As a result, the ALJ completed the sequential analysis and concluded Petitioner was not

disabled based on the medical evidence, not based on substantial gainful activity. (AR 14-23.)

Because the ALJ found in Petitioner's favor at step one, this is not an appealable issue. *See e.g.,*

*Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (plaintiff is not prejudiced when the ALJ

resolves a step in plaintiff's favor); *Gonzalez v. Astrue*, No. CV-10-348-JPH, 2012 WL 683313

(E.D. Wash. Mar. 2, 2012) (declining to consider the petitioner's claim of error at step one when

the ALJ completed the sequential analysis and concluded the petitioner was not disabled based

upon the evidence in the record).

      Further, even if the ALJ erred in his finding, any such error was harmless. *See Stout v.*

*Commissioner, Soc. Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error

harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

Because the ALJ did not find Petitioner to be not disabled on the basis of SGA and did not end

his inquiry at step one, but continued to address in the alternative the remaining four steps of the

sequential disability evaluation process the alleged error was harmless. *Lesch v. Colvin*, No.

3:12-cv-05925-KLW, 2013 WL 5525702 at *3 (W.D. Wash. Oct. 4, 2013).

**2.**      **Physician Testimony – Petitioner's Treating Physician**

      The united States Court of Appeals for the Ninth Circuit distinguishes among the

opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

those who examine but do not treat the claimant (examining physicians); and (3) those who

neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d

821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source

than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  In turn, an

examining physician's opinion is entitled to greater weight than the opinion of a nonexamining

**MEMORANDUM DECISION AND ORDER - 6**

physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). But, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ may reject a treating physician's opinion if it is based "to a large extent"

**MEMORANDUM DECISION AND ORDER - 7**

on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Geidl treated Petitioner after his accident in August of 2011. Petitioner first saw Dr. Geidl on September 7, 2011, complaining of numbness in his legs and back pain. Petitioner reported that he had difficulty sitting and that standing caused numbness. Dr. Geidl observed bilateral parasinous muscle tenderness and spasms in the back, and that Petitioner was unable to lie flat on the examination table for the straight leg raise test or to examine his deep tendon reflexes. At Petitioner's next visit on November 2, 2011, Petitioner noted to Dr. Geidl that he was walking daily (with a lot of breaks) with his dogs. A December 2, 2011 MRI of Petitioner's lumbar spine revealed possible mild neural foramen encroachment bilaterally at L3-L4 and on the right at L5-S1. On December 21, 2011, Petitioner saw physical therapist Chris Kipp, who observed claimant had a restricted range of motion, and a slight forward bent gait.

On January 5, 2012, Dr. Donald Soloniuk performed a neurosurgery consultation. Petitioner reported pain radiating down to his buttocks and knees, and that movement aggravated his symptoms. Dr. Soloniuk observed Petitioner was moderately uncomfortable during the examination, and that he had diffuse tenderness at the lumbosacral junction and sciatic notch upon touch. But, Dr. Soloniuk found Petitioner's straight leg raise tests were negative. Dr. Soloniuk observed Petitioner walked with a limp and his gait favored the left leg. Dr. Soloniuk diagnosed lumbar degenerative disc disease at L3-L4 and L5-S1 with a superimposed musculoligamentous strain injury, and was of the opinion that Petitioner's pain symptoms did not support radiculopathy and were unrelated to the mild foraminal stenosis findings at L3-L4 and L5-S1. Dr. Soloniuk recommended an extensive course of physical therapy and back rehabilitation.

**MEMORANDUM DECISION AND ORDER - 8**

On January 17, 2012, Petitioner again saw Mr. Kipp for physical therapy. At that visit, Petitioner reported he had been riding his horse, which did not cause him pain, and he had been walking on his treadmill about three miles each day, and performing bench presses and arm punches on his bow flex machine. Petitioner attended only two more physical therapy sessions, on January 24, 2012, and February 2, 2012.

On May 3, 2012, Petitioner saw Dr. Geidl, and reported he had likely secured a position with an employer willing to provide accommodations. He reported also that his symptoms were better and worse as he attempted to perform activities around the house. Dr. Geidl observed that Petitioner was not in acute distress, his gait and station were normal, and that Petitioner moved more freely than in his previous visits. On April 18, 2013, Petitioner had Dr. Geidl assist with his paperwork for his disability claim. He again reported he was doing better than he was initially, with good days and bad days. Dr. Geidl observed Petitioner's gait and station were normal.

Dr. Geidl rendered several opinions regarding Petitioner's disability. In September of 2011, Dr. Geidl opined that Petitioner should not report to work until he underwent a consultation with a neurosurgeon and physical therapist. In November of 2011, Dr. Geidl opined that, until Petitioner had an appropriate evaluation and treatment indicated otherwise, Petitioner should not lift greater than five pounds or perform bending, leaning or squatting. She was also of the opinion that Petitioner could sit for 15 minutes and stand for five minutes at a time with frequent position changes, and could walk for short periods and brief distances. In March of 2012, Dr. Geidl opined that Petitioner's lumber injury would intermittently affect his ability to complete his job duties, and released him for work with accommodations based upon his restrictions from engaging in activities that could aggravate his pain symptoms, which could vary. In April of 2013, Dr. Geidl rendered an opinion that Petitioner could lift no more than 25

**MEMORANDUM DECISION AND ORDER - 9**

pounds, stand for up to five minutes, sit for up to thirty minutes, and that he would require frequent changes in position and that he could perform sporadic and intermittent periods of bending, leaning or squatting. Dr. Geidl opined also that bending, squatting, leaning, walking more than one block on a flat surface, and walking on an uneven surface would aggravate Petitioner's pain, and that Petitioner could walk for short periods and brief distances.

The ALJ rejected Dr. Geidl's opinion only as it related to Petitioner's limited ability to stand, walk, and sit, and for her incomplete assessment of Petitioner's postural limitations. The reasons the ALJ gave for rejecting those portions of Dr. Geidl's opinion included Petitioner's imaging studies showing only mild findings, negative straight leg raise tests as more time passed, and Dr. Geidl's observations in May of 2012, and April of 2013, that Petitioner walked with a normal gait and station.

The ALJ noted also Petitioner's statements to the physical therapist that he was riding a horse and walking three miles on the treadmill. Additionally, the ALJ credited Dr. Geidl's opinion that Petitioner should avoid certain postural activities as consistent with the medical record, but faulted her for not indicating what specific limitations, if any, applied to Petitioner's ability to perform postural activities. Further, the ALJ noted that the state agency physicians, Dr. Coolidge and Dr. Friedman, who reviewed Petitioner's medical records, were both of the opinion that Petitioner could stand and/or walk for a total of six hours and sit for a total of six hours during an eight hour work day, and they specifically addressed Petitioner's postural limitations by indicating Petitioner could frequently crawl, kneel, balance, and climb ramps and stairs, but could only occasionally crouch and stoop and he should never climb ladders, ropes, or scaffolds.

Petitioner claims the above reasons given by the ALJ are legally insufficient under the clear and convincing standard, because Dr. Geidl's opinions are not contradicted by Drs.

**MEMORANDUM DECISION AND ORDER - 10**

Coolidge and Friedman. Petitioner next argues that the medical evidence of record supports a finding of disability.

Here, the ALJ rejected Dr. Geidl's opinion regarding two aspects of Petitioner's RFC— his ability to walk, sit and stand during an eight hour work day, and her non-specific limitations as to Petitioner's postural abilities—in favor of the nonexamining state agency physicians' opinions regarding Petitioner's RFC. In that sense, Dr. Geidl's opinion is controverted by another doctor, and her opinions may be rejected for specific and legitimate reasons supported by substantial evidence in the record.

The ALJ found Dr. Geidl's opinion was contradicted by other evidence in the record. The ALJ noted that the opinion by Dr. Geidl was contrary to objective medical evidence, which included x-rays and MRI's showing only mild degenerative findings. The ALJ noted also that Dr. Soloniuk, a specialist, diagnosed disc disease, but was of the opinion that Petitioner's pain was caused by severe muscle and ligament strain unrelated to the imaging findings. Further, the ALJ noted that, over time, Petitioner was observed by his physician to be in less distress, his walking improved to the point where his gait and station were normal, later straight leg tests were negative, and by Petitioner's own statements to the physical therapist that he was walking on the treadmill for up to three miles a day, working out on his bow-flex machine, and riding his horses without pain. (AR 380.) The ALJ rejected Dr. Geidl's opinion because it was contradicted by other evidence in the record.

Petitioner's argument that the medical evidence of record should be interpreted differently is flawed. The ALJ is the one responsible for resolving conflicts in the medical evidence. *Andrews*, 53 F.3d at 1035. Where the ALJ's interpretation of the evidence is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. Here, the ALJ

**MEMORANDUM DECISION AND ORDER - 11**

rejected the opinion of Dr. Geidl for specific, legitimate reasons supported by substantial evidence in the record.

**3.      State Agency Physicians**

Petitioner contends the ALJ erred because he failed to incorporate all of the limitations expressed by the state agency physicians in his RFC, which would have resulted in a finding of disabled. Both Drs. Coolidge and Friedman opined, on the physical RFC form, that Petitioner could "stand and/or walk (with normal breaks) for a total of: about 6 hours in an 8-hour workday" and "sit (with normal breaks) for a total of: about 6 hours in an 8-hour workday." (AR 89, 112.) However, there is an additional statement on each form that indicates Petitioner "must periodically alternate sitting and standing to relieve pain and discomfort," with no further elaboration by either doctor. Dr. Friedman was of the opinion that Petitioner's medical records showed improvement over time, and agreed with the assessment by Dr. Geidl that Petitioner should be capable of performing light work activities by August of 2012. (AR 111, 360.)

Because the state agency consultants both included within their RFC assessments that Petitioner must periodically alternate sitting and standing, Petitioner contends it was error for the ALJ to omit that requirement in the hypothetical posed to the Vocational Expert. Brief at 13 (Dkt. 16.) Petitioner contends the omission was harmful error, because the "vocational expert testified that a sit/stand option addressed in Dr. Geidl's opinion can preclude work." *Id.*

First, Petitioner misstates the questions posed to the vocational expert. The ALJ asked the vocational expert whether, if all limitations endorsed by Dr. Geidl were considered, all work would be precluded. Dr. Geidl did not specifically opine that Petitioner must periodically alternate sitting and standing; rather, Dr. Geidl's limitations as expressed in her April 2012 assessment were that Petitioner could not stand for more than five minutes, could not sit for more

**MEMORANDUM DECISION AND ORDER - 12**

than thirty minutes, he would require frequent changes in position, and he could not walk for more than one block.  (AR 77.) Based upon those limitations, the vocational expert indicated all work would be precluded if Petitioner was required to sit and stand every thirty minutes or less. (AR 78.) Thus, Dr. Geidl's restrictions for walking, sitting, and standing were more restrictive than those expressed by Drs. Coolidge and Friedman; their RFC assessments indicated Petitioner could perform light work even with periodically alternating sitting and standing, because he could sit for six hours and stand/walk for six hours.

Second, the definition of light work already includes position changes. The full range of light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time…. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." SSR 83-10.  In other words, there is no conflict between the RFC adopted by the ALJ and the RFC expressed by the state agency physicians, because light work includes, by definition, periodically alternating sitting, standing, and walking within an eight hour work day.  It was reasonable for the ALJ to interpret the state agency physicians' opinions in this manner given they both concluded Petitioner capable of light work.  *Batson*, 359 F.3d at 1193 ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record").

Accordingly, the determination by the ALJ was not the product of legal error.

## 4.      Obesity

Petitioner argues that the ALJ erred by failing to consider his obesity. Petitioner weighed 286 pounds by March of 2013, and had gained nineteen pounds since August of 2011. He had a Body Mass Index (BMI) of 35 (AR 415.) Petitioner contends that, at the hearing, the ALJ

**MEMORANDUM DECISION AND ORDER - 13**

questioned Petitioner about his height and weight, but never addressed obesity in his analysis despite the notation by Petitioner's treating physician that his BMI was consistently above 30.

It is sometimes appropriate for an ALJ to consider the impact of obesity, even if it does not meet the listing criteria. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). If an impairment is not "severe," it may, when considered with limitations or restrictions due to other impairments, be critical to the outcome of a claim. *Id*. at 1181–82. Where appropriate, the ALJ must determine the effect of obesity on other impairments and its effect on Petitioner's ability to work and general health, given the presence of these impairments. *Id*. at 1182.

The responsibility to raise obesity as an impairment can be triggered even if the claimant does not raise obesity as a disabling factor. In *Celaya*, the Ninth Circuit found that an ALJ had a responsibility to include obesity in the analysis where (1) obesity was raised implicitly in the report of symptoms, (2) it was clear from the record that the claimant's obesity was at least close to the listing criterion, and (3) the claimant was pro se, and the ALJ's observation of the claimant and the information in the record "should have alerted" the ALJ to the need to develop the record with respect to the claimant's obesity. *Id*. The *Celaya* court emphasized that the petitioner was illiterate, unrepresented, and "very likely never knew that she could assert obesity as a partial basis for her disability." *Id*. at 1183. Further, the court pointed out that the ALJ is not a "mere umpire" and has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." *Id*. (citations omitted).

However, in *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005), the Ninth Circuit distinguished *Celaya* when determining that an ALJ was not required to consider the effects of obesity. *Burch* noted that there was no evidence in the record that the petitioner's obesity

**MEMORANDUM DECISION AND ORDER - 14**

exacerbated other impairments, except possibly her back pain, and "[m]ore significantly," that the claimant was represented by counsel.  *Id*. The court noted that an ALJ is not required to discuss the combined effects of impairments or compare them to a listing in any equivalency determination, "unless the claimant presents evidence in an effort to establish equivalence."  *Id*. at 683 (citations omitted). The only evidence in the record concerning obesity were notes from doctors that observed weight gain, indicated that the claimant was obese, and recommended that the claimant participate in a supervised weight loss program.  *Id*

Here, the ALJ was not required to specifically address the impact of obesity on Petitioner's ailments, because Petitioner did not sufficiently raise the issue. As demonstrated in *Burch*, the mere presence of a mention in the record that the claimant was obese is insufficient to require the ALJ to explicitly consider the issue in his written opinion. The Court has reviewed the medical records notations or references to obesity. Petitioner, who proceeded with the assistance of counsel, did not list obesity as a basis for the disability application and did not present evidence that it impaired his ability to work. No physician attributed functional limitations to obesity, and Petitioner did not present evidence to suggest that obesity caused any functional limitations. The Court can find nothing in the record that should have alerted the ALJ to a need to raise the issue and further develop the record, and Petitioner does not point to any specific testimony or record other than his BMI.

The Court therefore cannot conclude that the ALJ had a responsibility to raise and address this issue, and there was no error. *Aguilar v. Colvin*, No. 13-cv-891-BEN (NLS), 2014 WL 1653109 *7-8 (S.D. Cal. 2014) (finding no error when there was no evidence in the record that the claimant raised obesity as a basis for his disability application).

5.      **Lay witness testimony**

MEMORANDUM DECISION AND ORDER - 15

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v.Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities.  *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

At the hearing, Anna Hubert, Petitioner's wife, testified that her husband has three bad days each week, during which he is grumpy, snappy, and paces frequently. She testified that the amount of time her husband spends in bed on one of those bad days varies from all day to two to three hours. Finally, Mrs. Hubert testified that her husband no longer attends their children's

**MEMORANDUM DECISION AND ORDER - 16**

sporting events, because he is unable to sit in the bleachers due to pain.

The ALJ rejected Mrs. Hubert's testimony because "her testimony does not convince me that the residual functional capacity is less limiting than warranted by the evidence discussed in this decision." The ALJ next noted the medical evidence of record and the opinions of the medical professionals constituted reasons to disregard her testimony.

Petitioner's argument fails. The ALJ cited the conflicting medical evidence of record as a reason for rejecting Mrs. Hubert's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with the medical evidence is one reason for discrediting the testimony of lay witnesses). The ALJ's determination was not error.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the petition for review is **DISMISSED**.

Dated: **September 08, 2015**

Honorable Candy W. Dale
United States Magistrate Judge